UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **Axcess Instruments IP Holding Company,**<br><br>Plaintiff,<br><br>v.<br><br>**Olympus Corporation and Olympus America Inc.,**<br><br>Defendants. | Case No. 2:25-cv-561<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

CICAS IP LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Olympus Corporation ("Olympus Japan") and Olympus America Inc. ("Olympus America") (collectively, "Olympus" or "Defendants"), and alleges, upon information and belief, as follows:

## THE PARTIES

1. Axcess Instruments IP Holding Company is a limited liability company organized and existing under the laws of the State of Wyoming with its principal place of business at 416 Mulberry Street, Tyler, Texas 75702.

2. Upon information and belief, Defendant Olympus Japan is a Japanese corporation with a place of business at Shinjuku Monolith, 2-3-1 Nishi-Shinjuku, Shinjuku-ku, Tokyo 163-0914, Japan.

3. Upon information and belief, Defendant Olympus America is a New York corporation with a place of business in this District located Plano, Texas. Upon information and belief, Olympus America employs individuals in this Judicial District involved in the sales and marketing of its products. Olympus America may be served with process via its registered agent United States Corporation,

211 E. 7th Street, Suite 620, Austin, Texas 78701. Upon information and belief, Olympus America does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the judicial Eastern District of Texas.

4. Olympus products are made outside and inside the United States of America and then are imported into the United States, distributed, and sold to end-users via the Internet and via distribution partners, retailers, reseller partners, and solution partners, including Olympus America.[1] Those sales occur in the United States, and throughout Texas, including in this District.



5. Upon information and belief, Defendants are engaged in a joint enterprise to exploit and monetize the Accused Instrumentalities in the United States, including within this Judicial District, and are jointly and severally liable to Plaintiff for all damages resulting therefrom. By way of example, and on information and belief, Defendant Olympus Japan is the owner in all rights to the trademark

---

[1] *See* screenshot of Defendant's webpage showing Olympus Corporation of America as the U.S. contact of Defendant products https://www.olympus-global.com/products/contact/ and https://www.olympusprofed.com/pulm/navigated-bronchoscopy/28782/.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                                                             2

"Olympus" with the USPTO.[2] Yet, many other Live trademarks are registered to both Olympus Japan and Olympus America.[3] Moreover, Olympus patent rights appear to be spread across a variety of Olympus subsidiaries, including Olympus Japan and Olympus America,[4] but under common control and direction. Indeed, Olympus Japan, Olympus America and other Olympus subsidiaries have all, jointly and severally, at different occasions, brought IPR proceedings on behalf of Olympus.[5] Further, Olympus Japan, Olympus America and other Olympus subsidiaries have also brought enforcement actions on behalf of Olympus numerous times in District Courts, for example, *Olympus Corporation of the Americas et al v. Erbe Elektromedizin GmbH et al*, Case No. 3-19-cv-07039 (N.D. Cal. October 25, 2019). Stull further, the Accused Instrumentalities are marketed in the same form, under the same names (*e.g.,* Olympus), by all Defendants. On information and belief, there exists written agreement(s) among and between Defendants governing the rights, duties, and responsibilities of each entity in their collective effort to exploit and monetize the Accused Instrumentalities in the United States, including within this Judicial District, all to the harm of Plaintiff.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over Defendant. Defendant has continuous and systematic business contacts with the State of Texas. Defendant transacts business within this District and elsewhere in the State of Texas. Further, this Court has personal jurisdiction over Defendant based on its commission of one or more acts of infringement of patent-in-suit in this District and elsewhere in the State of Texas.

---

[2] *See* https://tsdr.uspto.gov/#caseNumber=72008978&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch
[3] *See* https://tmsearch.uspto.gov/search/search-results
[4] *See* https://patents.google.com/?assignee=olympus
[5] *See* *https://search.docketnavigator.com/patent/binder/0/0*

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                                 3

8. Upon information and belief, Defendant transacts substantial business in the State of Texas and this Judicial District. Defendant has committed acts of infringement in this District by, among other things, offering to sell and selling products that infringe the asserted patents, including the accused products as alleged herein, as well as providing service and support to its customers in this District. Upon information and belief, Defendant, directly or indirectly, participates in the stream of commerce that results in products, including the accused products, being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the United States to the State of Texas.

9. Olympus America maintains regular, physical, continuous, and established places of businesses, including places of business for Regional Vice President, territory sales managers and technical sales for Texas, including products related to the Accused Instrumentalities and Gastroenterologists, in this District, which Defendant has established, ratified, and controlled; have employed people to conduct their business from this District; and from which they have willfully infringed the Asserted Patents in order to benefit themselves in this District. Defendant commits acts of infringement in this District, including as explained further below by making and using the infringing systems in, and performing at least one step of the accused methods of the Asserted Patents, at their regular and established places of business in this District.

10. As shown below, Defendant has employees in the Eastern District of Texas,[6] including a key member of Medical Capital Equipment at Olympus for over 28 years:

---

[6] *See* https://www.linkedin.com/company/olympus/people/?facetGeoRegion=100517351 (search results for 3 employees of Olympus in Plano, TX); https://www.linkedin.com/company/olympus/people/?facetGeoRegion=105918502 (search results for 2 employees of Olympus in Frisco, TX); and
https://www.linkedin.com/company/olympus/people/?facetGeoRegion=105896187 search results for 1 employees of Olympus in McKinney, TX)

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    4



See https://www.linkedin.com/in/don-white-77623912/ (screenshot of Don White's LinkedIn page, located in Plano, of Defendant).



See https://www.linkedin.com/in/shivan-tovi-a9b16360/ (screenshot of Shivan Tovi's LinkedIn page, as Quality Analyst, located in Plano, of Defendant).

11. As shown above, all these employees are located in this District in Plano and Frisco, Texas. Their locations within the Eastern District of Texas are important to the business performed and defendant had intention to maintain some place of business in the Eastern District of Texas in the event any employees decided to terminate their residences as a place there.

12. Defendant's employees also not merely possess inventory. Their use in the Eastern District of Texas part of Defendant's services to its Eastern District of Texas customers, a job that falls on these employees. When sample products or inventory arrive at these employees' places of businesses, they then visit local customers to deliver or show the samples.

13. Defendant has further solicited salespeople in public advertisements to cover the challenged venue area and preferred that those employees live in their assigned sales area. Their locations within the Eastern District of Texas are important to the business performed and defendant had intention to

maintain some place of business in the Eastern District of Texas in the event any employees decided to terminate their residences as a place there.

14. Defendant has regular, physical presences of Defendant employees in this District conducting Defendant's business. Defendant maintains a regular and established place of business at the Defendant defined places and separate areas by the regular, physical presence of its employees.

15. Venue is proper in this District as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b). As noted above, Defendant maintains a regular and established business presence in this District. *See In re Monolithic Power Sys., Inc.,* 50 F.4th 157, 160 (Fed. Cir. 2022); *see also AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-00361-JRG, 2022 WL 1511757, at *9 (E.D. Tex. May 12, 2022); *IOT INNOVATIONS LLC, Plaintiff, v. MONITRONICS INTERNATIONAL, INC., d/b/a BRINKS HOME*, Defendant., No. 2:22-CV-0432-JRG-RSP, 2023 WL 6318049, at *5 (E.D. Tex. Sept. 11, 2023), *report and recommendation adopted sub nom. Iot Innovations LLC v. Monitronics Int'l, Inc.*, No. 222CV00432JRGRSP, 2023 WL 6300560 (E.D. Tex. Sept. 27, 2023).

16. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, among other things, Olympus Japan is subject to personal jurisdiction in this Judicial District, Defendant has regularly conducted business in this Judicial District, certain of the acts complained of herein occurred in this Judicial District, and Defendant is not a resident in the United States and may be sued in any judicial district.

## BACKGROUND AND PATENTS-IN-SUIT

17. Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent 10,426,513 (the "'513 Patent" or the "Patents-in-Suit"), relating to improved devices and methods for minimally invasive surgical procedures.

18. The Patents-in-Suit are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                                                         6

19. The inventions described and claimed in the Patents-in-Suit were invented individually and independently by named inventors, Dr. Michael J. Norton and Noel D. Ischy.

20. One of the inventors, Dr. Norton, is the co-founder and Vice President of Plaintiff, Axcess Instruments IP Holding Company. Dr. Norton is a board-certified General Surgeon in Tyler, TX where he has practiced for 32 years. After graduating from the University of Texas Southwestern Medical School in 1987, Michael trained under Dr Ernest Poulos at St Paul Medical Center in Dallas, Tx.  He moved to Tyler, TX in 1992 and has enjoyed a full career as a General Surgeon at Christus Mother Frances Hospital. During his career, Dr. Norton has served as President of the Medical staff and as Chief of Surgery. He continued his commitment to the medical community on the Board of Councilors and as President of the Smith County Medical Association. He has contributed to hospital leadership in multiple areas and is currently section chief of General Surgery and Chair of the Breast Program committee at Christus Mother Frances Hospital in Tyler.

21. Dr. Norton was trained in laparoscopic surgery during residency and developed an interest in innovations for minimally invasive surgery. After significant research and development, Dr. Norton then founded Axcess Instruments Inc., specifically formed to develop techniques in Single Incision Laparoscopy with the AxcessPort. This was followed by integrating digital devices into the AxcessPort to optimize imaging and performance in surgical imaging. Dr. Norton has been granted 13 utility U.S. patents as well as several international patents for new and useful inventions.

22. The Patents-in-Suit include numerous claims defining distinct inventions. As represented in Fig. 6 of the '513 Patent below, for example, the inventions generally relate to laparoscopic surgical procedures and in particular to an improved device and method for minimally invasive surgical procedures.



Figure 6

23. The priority date of the '513 Patent is at least as early as March 3, 2006. As of the priority dates, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

24. Before the inventions of inventions of the '513 Patent, surgeons did not have an apparatus and method that would allow the surgeon to perform minimally invasive operations with body flanges having a smaller overall cross-section while allowing for triangulation within the patient. With the art available at the time before the inventions of the '513 Patent, many incisions were needed for body access openings thus increasing the pain caused by surgery and further increasing the recovery time and the risk of infection.

25. Thus, the Patents-in-Suit are pioneering patents. Indeed, the '513 Patent has been cited as relevant prior art in 323 subsequent United States Patent Applications, including by such technology leaders as Ethicon (Johnson & Johnson), Intuitive, Tyco, Applied Medical Resources, Stryker and Covidien.

## OLYMPUS' INFRINGING PRODUCTS

26. Upon information and belief, Olympus makes, sells, advertises, offers for sale, uses, or otherwise provides single-port robotic surgical methods and systems, including, but not limited to, the Olympus TriPort15 access device ("Accused Instrumentalities"), that utilize the Patents-in-Suits' patented body port or body flange access devices and methods for performing laparoscopic surgery, as shown exemplarily below and attached as Exhibit A for the '513 Patent.

27. As exemplarily shown in more detail of Exhibit A, Olympus's Accused Instrumentalities include each and every limitation of the patents-in-Suit and at least, but not limited to, claim 1 of the '153 Patent and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.

## COUNT I
### Infringement of U.S. Patent No. 10,426,513

28. Plaintiff incorporates the above paragraphs by reference.

29. Olympus without authority, continues to make, use, sell, offer to sell, and/or import into the United States its Accused Instrumentalities as shown above.

30. Olympus thus has infringed and continues to infringe at least claim 1 of the '513 Patent literally and/or under the doctrine of equivalents.

31. Olympus has also actively induced and will continue to actively induce the infringement of at least one of claim 1 of the '513 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the videos above, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce

others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '513 Patent, without license or authority from Plaintiff. On information and belief, Olympus knows that the induced acts constitute infringement of the '513 Patent.

32. Olympus individually, collectively, or through others or intermediaries, has contributorily infringed, and/or is contributorily infringing, in violation of 35 U.S.C. § 271(c), at least one claim of the '513 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '513 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '513 claims.

33. Olympus has been on actual notice of the '513 Patent at least as early as the filing of this Complaint. Olympus's direct and indirect infringement of the '513 Patent has thus been committed with knowledge of the '513 Patent, making Olympus liable for direct, indirect, and willful infringement.

34. On information and belief, Olympus has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '513 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Thus, the infringement of the '513 Patent by Olympus is willful.

35. Olympus's infringement of the '513 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless it is enjoined by this Court.

36. Plaintiff has been damaged because of the infringing conduct by Olympus alleged above. Thus, Olympus is liable to Plaintiff in an amount that adequately compensates it for such infringement,

which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

37. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as follows:

1. Declaring that Defendants have infringed the Patents-in-Suit;

2. Awarding Plaintiff its damages suffered because of Defendants' infringement of the Patents-in-Suit;

3. Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

4. An award to Plaintiff of enhanced damages, up to and including trebling of Plaintiff's damages pursuant to 35 U.S.C. § 284 for Defendants' willful infringement of the Patents-in-Suit;

5. Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants from further acts of infringement with respect to the Patents-in-Suit;

6. Awarding Plaintiff ongoing post-trial royalties for infringement of the Patents-in-Suit; and

7. Granting Plaintiff such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

        Respectfully Submitted

        */s/ Christopher A. Honea*
        M. Scott Fuller
           Texas Bar No. 24036607
           sfuller@ghiplaw.com
        Randall Garteiser
           Texas Bar No. 24038912
           rgarteiser@ghiplaw.com
        Christopher A. Honea
           Texas Bar No. 24059967
           chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR PLAINTIFF AXCESS INSTRUMENTS IP HOLDING COMPANY**